United States District Court
Southern District of Texas
**ENTERED**
November 04, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALERTE CONGOLAISE POUR L'ENVIRONNEMENT ET LES DROITS DE L'HOMME; ACTIONS POUR LA PROMOTION ET PROTECTION DES PEUPLES ET ESPECES MENACES, <br><br>Petitioners, <br><br>v. <br><br>WINDS EXPLORATION AND PRODUCTION, LLC; UNITE OIL AND GAS PRODUCTION, LLC; FRANKLIN IHEKWOABA, <br><br>Respondents. | Misc. Action No. 4:25-MC-02083 |

## MEMORANDUM OPINION AND ORDER

Petitioners Alerte Congolaise pour l'Environnement et les Droits de l'Homme ("ACEDH") and Actions pour la Promotion et Protection des Peuples et Espèces Menacés ("APEM") (collectively, "Petitioners") are not-for-profit organizations based in the Democratic Republic for the Congo ("DRC"). They allege that a 2022 auction for methane gas blocks in Lake Kivu, DRC unlawfully awarded bids to three companies including Winds Exploration and Production, LLC ("Winds Exploration"). Wishing to contest these bids because of the risk of "catastrophic" explosions and harm to the local population, Petitioners plan to bring an administrative lawsuit in the DRC against the Congolese government. In preparation for the Congolese lawsuit, Petitioners filed this miscellaneous action under 28 U.S.C. § 1782 to request discovery from Winds

Exploration, Unite Oil and Gas Production, LLC ("Unite Oil"), and Franklin Ihekwoaba (collectively, "Respondents").

Pending before the Court is Petitioners' Request for an Order to Take Discovery under 28 U.S.C. § 1782. (Dkt. No. 1). For the following reasons, Petitioners' Request is **GRANTED**.

I.   **BACKGROUND**[1]

ACEDH is a non-profit founded in North Kivu, DRC in 2008 to "secure the protection of the environment and human rights, focusing on environmental justice, community-based protection of conservation areas, and accountable and transparent governance of land, fisheries, and energy." (Dkt. No. 2 at 7). APEM is a non-profit established in Kinshasa, DRC in 2013 with a mission to "work[] with stakeholders to achieve human well-being through respect for human rights and community rights in a healthy and balanced environment." (*Id.*).

In July 2022, the DRC government announced that it was placing three methane gas blocks up for auction for energy extraction. (*Id.* at 9). These blocks are located in Lake Kivu, near the border between the DRC and Rwanda, an area known for having "multiple national parks, indigenous peoples' territories, and other protected areas." (*Id.* at 9, 10). According to Petitioners, "there is significant scientific uncertainty around the safety of methane extraction in Lake Kivu" because of the potential for "a catastrophic

---

[1] The factual background of this Order is taken from Petitioners' Memorandum of Law in support of their Request. (Dkt. No. 2).

release of gases that would present risks to millions of people living around the lake." (*Id.* at 10–11).

Despite this, the DRC government selected three winning bids for the gas blocks in January 2023. (*Id.* at 9). One of these winning bids belonged to Unite Oil, a Texas-based limited liability company owned by Franklin Ihekwoaba.[2] (*Id.*). On September 9, 2023, the DRC government announced that it had signed a production sharing agreement with Unite Oil. (*Id.*).

Petitioners, worried about the "catastrophic" risks of allowing the bid to move forward, intend on bringing an administrative lawsuit in the DRC to "challenge the conduct of the auction and the attribution of the gas block[] to" Unite Oil. (*Id.*). They allege that "the auction process and outcome were characterized by a lack of transparency, a failure to follow required procedures and laws, and improper government conduct that violates Congolese law." (*Id.*). These improper acts include failing to get approval for the bid from the Council of Ministers, failing to undertake a prior environmental evaluation of the plan, and failing to consult with local communities on the plan as required by law. (*Id.* at 10–11).

Petitioners also allege that there was improper interference with the bid process and that Unite Oil lacks necessary experience with lake-bed methane extraction in

---

[2] Unite Oil was initially formed under the name Winds Exploration and Production, LLC, but was renamed by its owner Franklin Ihekwoaba in 2024 to Unite Oil and Gas Production LLC. (Dkt. No. 2 at 8). Ihekwoaba then created a new limited liability company reusing the name Winds Exploration and Production, LLC. (*Id.*). Both companies (and Ihekwoaba) have addresses in Houston, Texas.

complex environments. (*Id.* at 11–12). Indeed, they claim that Unite Oil's track record with methane production is "troubling," with "a pattern of regulatory non-compliance and operational absence" in its only other methane production venture in Utah. (*Id.* at 12). This lack of qualification should have been considered by the DRC government, according to Petitioners, when it was awarding bids for the Lake Kivu blocks. (*Id.* at 12–13).

In preparation for their administrative lawsuit in the DRC, Petitioners investigated the events surrounding the Lake Kivu block auction, spoke with Congolese authorities, and sought documents related to the auction. (*Id.* at 13–14). Petitioners also filed this miscellaneous action under 28 U.S.C. § 1782 against Respondents to aid in their preparation for the DRC lawsuit. (*Id.* at 14) (noting that Petitioners "need to present all legal and factual arguments in their initial complaint"). They are requesting all documents in Respondents' control associated with the Lake Kivu auction and Respondents' communications with the DRC government. (*Id.*). Petitioners also wish to depose corporate representatives of Unite Oil and Winds Exploration as well as Franklin Ihekwoaba because of his involvement with the auction and position as owner of both companies. (*Id.* at 15–16).

## II.   LEGAL STANDARD

Generally, a district court may order a person who resides or is found in the district "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). One way that this happens is

when "a foreign or international tribunal" or "any interested person" requests that the district court award such discovery in accordance with the Federal Rules of Civil Procedure. *Id.* Section 1782(a) "aims to provide efficient assistance to parties litigating in foreign tribunals and, by example, to encourage foreign assistance in U.S. Courts." *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 473 (5th Cir. 2022).

Section 1782 has three statutory elements: (1) the discovery is sought from an individual located in the district in which the application is filed; (2) the discovery is for use in a legal proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." 28 U.S.C. § 1782.

Because courts are not required to grant a Section 1782 discovery application just because it has the authority to do, courts also address four discretionary factors known as the "*Intel* factors." *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65, 124 S.Ct. 2466, 2482–84, 159 L.Ed.2d 355 (2004). These factors include: (1) whether the respondent is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the "character" of the foreign proceedings, and the receptivity of the foreign court to U.S. federal court assistance; (3) whether the request attempts to circumvent foreign proof-gathering restrictions; and (4) whether the request is "unduly intrusive or burdensome." *Id.*

### III.  DISCUSSION

The Court first addresses the statutory factors of Section 1782 and then the *Intel* factors. Because all factors weigh in Petitioners' favor, the Court grants their Request for Judicial Assistance.

### A.  STATUTORY FACTORS

The Court is satisfied that the statutory factors are met. First, all Respondents can be found within the Southern District of Texas. (*See* Dkt. No. 2-3 at 5–6) (September 10, 2024 Texas Certificate of Formation for Winds Exploration); (*Id.* at 8–12) (September 11, 2018 and September 9, 2024 Texas Certificates of Formation and Amendment for Unite Oil); (*Id.* at 6) (noting that Ihekwoaba's address is "1218 Secret Forest Ct, Cypress, TX 77429"); (Dkt. No. 2 at 17) (stating that Petitioners will attempt to serve Ihekwoaba personally in this District). Second, the discovery sought is for use in an anticipated administrative lawsuit in the DRC to support Petitioners' claims that the DRC government unlawfully awarded gas block auction bids to Respondents and other companies. (Dkt. No. 2 at 14–16); *see also Intel Corp.*, 542 U.S. at 247, 124 S.Ct. at 2473 ("[T]he 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent.'"). Third, Petitioners are "interested persons" under Section 1782 because they are a party—the plaintiffs—in the reasonably contemplated foreign proceedings. *Intel Corp.*, 542 U.S. at 256, 124 S.Ct. at 2478 ("No doubt litigants are included among, and may be the most common example of, the "interested person[s]" who may invoke § 1782.").

### B.  *INTEL* FACTORS

The first *Intel* factor, whether the person from whom discovery is sought is a participant in the foreign proceedings, weighs in favor of granting Petitioners' Request. Section 1782 is not normally appropriate when discovery is sought from a participant in a foreign proceeding because "[a] foreign tribunal has jurisdiction over those appearing

6

before it, and can itself order them to produce evidence." *Id.* at 542 U.S. 264, 124 S.Ct. 2483. None of the individuals or entities from whom discovery is sought here, however, are participants in the reasonably contemplated DRC proceedings. Petitioners' administrative lawsuit is against the DRC government, not Respondents. (Dkt. No. 2 at 21). As such, Respondents "may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

The second factor concerns whether the foreign tribunal is receptive to U.S. federal court judicial assistance. *Intel Corp.*, 542 U.S. at 264, 124 S.Ct. at 2483. Courts must "analyze whether there has been a 'clear directive' from the foreign tribunal that it 'would reject evidence' produced in the United States." *See Eni Ghana*, 2022 WL 3156224, at *4 (quoting *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010)). "A clear directive generally derives from 'authoritative proof—in the form of a judicial, executive, or legislative declaration—that the foreign jurisdiction would be hostile to such evidence.'" *Id.* (quoting *LEG Q LLC v. RSR Corp.*, No. 3:17-CV-01559, 2017 WL 2780213, at *9 (N.D. Tex. Aug. 31, 2017)).

There does not appear to be such a "clear directive" from the DRC. Nevertheless, given the statement in the affidavit of Petitioners' DRC counsel that a Section 1782 discovery request is not barred by the DRC judicial system, (Dkt. No. 2-1 at 16–17), and the fact that another federal district court has granted such a request for a DRC proceeding, *see In re Wildlife Conservation Soc.*, No. 1:24-MC-00246, Dkt. No. 20 (S.D.N.Y. Sept. 4, 2024), the Court finds that this factor weighs in favor of granting the Request.

7

The third factor considers "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 265, 124 S.Ct. at 2483. "[C]oncerns of comity do not permit the Court to 'insert[] a generally applicable foreign discoverability rule into the text of § 1782.'" *Eni Ghana*, 2022 WL 3156224, at *5 (quoting *Intel Corp.*, 542 U.S. at 261, 124 S.Ct. at 2481). However, "while the court should not base its § 1782(a) decision on whether this discovery would be allowed in [the foreign country], it may consider [the foreign country's] restrictions and whether this request is an attempt to thwart those restrictions." *In re Application of RSM Prod. Corp. v. Noble Energy, Inc.*, 195 F.Supp.3d 899, 906 (S.D. Tex. June 27, 2016).

At this *ex parte* stage there does not seem to be any indication that Petitioners are attempting to circumvent Congolese discoverability rules. Petitioners' DRC counsel has stated in a sworn affidavit that

> There is no bar or restriction in the Congolese judicial system that I know of that would prevent a Congolese court from receiving and considering evidence obtained with the assistance of the U.S. federal courts in an administrative case. In the DRC, a court sitting in an administrative case will consider any evidence that is probative of whether the challenged decision violated Congolese law. We are not limited to material that was before the Minister of Hydrocarbons and the Council of Ministers when they chose the winning bidders.

(Dkt. No. 2-1 at 16–17). The DRC counsel further stated that "[i]t is my legal opinion that I will be able to submit the evidence sought in the United States to the court in the DRC." (*Id.* at 17). The third factor thus weighs in favor of granting the Request.[3]

The final factor concerns the intrusive and burdensome nature of the discovery requests. In determining whether a request is overbroad, the Fifth Circuit has explained that the normal discovery rules under Federal Rule of Civil Procedure 26 apply. *See Tex. Keystone, Inc. v. Prime. Nat. Res., Inc.*, 64 F.3d 548, 554 (5th Cir. 2012).

Petitioners' Request is not overbroad. They request only documents in Winds Exploration and Unite Oil's possession related to the companies' dealings with the DRC from 2020 to the present and the auction bid. (Dkt. No. 2-4 at 9–11). Their request to depose Ihekwoaba along with corporate representatives of Winds Exploration and Unite Oil is likewise limited in scope to the auction bid and the companies' dealing with the DRC. (Dkt. No. 2 at 6, 23); (Dkt. No. 2-6 at 7–8). Regardless, any concerns involving the breadth of the Request "can properly be addressed through the mechanisms, including objections and motions, specifically provided by Rule 45" after it has been served. *LEG Q LLC*, 2017 WL 3780213, at *13. Therefore, all four *Intel* factors weigh in favor of granting Petitioners' Request.

---

[3] Of course, should Respondents have reason to contest this—or any—factor, they may do so through a motion to quash after being served. *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 758 (5th Cir. 2024).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioners' Request for an Order to Take Discovery under 28 U.S.C. § 1782. They may therefore issue and serve the request for production attached to their Memorandum of Law as Exhibit D and the subpoenas attached to their Memorandum as Exhibits E and F, together with a copy of this Order, in a manner consistent with the Federal Rules of Civil Procedure.

It is SO ORDERED.

Signed on November 3, 2025.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**